**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PEGGY BANKS, individually and on behalf of all others similarly situated, | : | Misc. Case No. 2:26-mc-74 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NXTLVL, LLC | : | |
| | : | |
| Non-Party Subpoena Recipient. | : | |
| | : | |
| ------------------------------------------------------- | : | ------------------------------------------------------- |
| PEGGY BANKS, individually and on behalf of all others similarly situated, | : | Underlying Action Pending in the U.S. District Court for the Northern District of California |
| | : | |
| Plaintiff | : | |
| | : | Case No. 4:24-cv-07877-JST |
| v. | : | |
| | : | Hon. Jon S. Tigar |
| SUNRUN INC. | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF PEGGY BANKS'S MOTION AND BRIEF IN SUPPORT OF MOTION TO**

**COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO RULE 45 SUBPOENA**

Pursuant to Fed. R. Civ. P. 45(d) and (g), Plaintiff Peggy Banks ("Plaintiff" or "Ms.

Banks"), by her attorneys, moves this Court for an order compelling third-party NXTLVL, LLC

("NXTLVL") to produce documents responsive to a subpoena served in connection with *Banks*

*v. Sunrun Inc.*, Civil Action No. 4:24-cv-07877-JST, pending in the United States District Court

for the Northern District of California (the "Litigation").

The documents sought fall into two interrelated categories, both of which go to the core

of the Litigation.

1

First, and most importantly, Plaintiff seeks NXTLVL's consent records. Defendant Sunrun Inc. ("Sunrun") has taken the position that the telemarketing calls at issue were placed with the prior express written consent of the persons called, and that the consent it relies upon was obtained through web properties operated or controlled by NXTLVL. Sunrun did not collect that consent. NXTLVL did. The evidence that would establish or refute it, including the webpages themselves and every version of them, the disclosure language displayed on them, the access, server, and error logs, the IP addresses, the date and time stamps, the referring URLs, the lead certificates, and the records identifying which affiliate delivered which consumer, sits in NXTLVL's systems, not Sunrun's.

Second, Plaintiff seeks NXTLVL's calling, lead transfer, and lead attribution records, to the extent they have not already been produced in the Litigation. Those records identify the calls actually placed, the numbers actually dialed, the campaigns under which they were dialed, the dialing platforms used, and the upstream vendors and aggregators from which the underlying consumer data was purchased or acquired before it was handed off to SunRun. They are the ordinary stuff of TCPA discovery and they are, again, in NXTLVL's hands.

NXTLVL was personally served with the subpoena on May 11, 2026 through its registered agent. In the three months since, NXTLVL has produced nothing, objected to nothing, moved to quash nothing, and not responded. Because the information sought is plainly relevant to the claims and defenses in the Litigation, because NXTLVL has waived any objection through its silence, and because the consent evidence exists nowhere else, this Court should compel NXTLVL to comply in full.

**Background and Meet and Confer Efforts**

A.    **The TCPA and the interests it protects.**

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' id. § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' id. § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019) (cleaned up).

"[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. See 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649–50 (cleaned up).

B.    **The underlying Litigation and Sunrun's consent defense.**

This matter stems from a putative class action arising under the TCPA for the receipt of telemarketing calls placed to Plaintiff and to the members of the proposed class. *See* Exhibit 1, Complaint against Sunrun Inc. The underlying case is a putative class action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Discovery, including expert discovery analyzing the Defendant's very books and records, has revealed that the Defendant placed at least 5,827 total calls to at least 199 unique telephone numbers where the

Defendant's records reflect that the number was on the Internal Do Not Call List not less than 30 days. This includes two calls to the Plaintiff. Plaintiff has alleged violations of the National Do Not Call Provisions of the TCPA and a motion is pending seeking leave to amend the claims to add an internal Do Not Call cause of action as against Defendant. In order to establish these claims and address any applicable defenses, the Plaintiff requires evidence as to the putative consent information, including claimed website visits, for the calls at issue.

Also through the course of discovery, Sunrun has admitted that it has purchased leads containing the Plaintiff's information, as well as that of other putative class members, and that it obtained that information from whom the Plaintiff seeks to compel, NXTLVL. Critically, SunRun has taken the position that the consumers whose numbers were called, including Ms. Banks, allegedly gave consent through web properties operated or controlled by NXTLVL.

That position is Sunrun's to prove. Prior express consent "is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011). These are documentary requirements, and the documents that would satisfy them, if they exist at all, are in NXTLVL's possession, care, custody or control. Even insofar as it is the Defendant's burden to prove consent, a standard which Plaintiff respectfully submits has not been met on this record, the Plaintiff still needs the underlying records from NXTLVL, including to address the limited evidence that SunRun has adduced. .

The practical consequence is what brings Plaintiff to this Court. Sunrun has raised a defense whose entire evidentiary foundation is held by someone else. Whether that foundation exists, whether there is in fact a signed writing, a timestamped web submission, a disclosure that met the regulatory requirements, an IP address that traces to Ms. Banks rather than to a data

broker's server farm, can be answered only from NXTLVL's records. Neither Plaintiff nor Sunrun can answer it without them.

**C.     The Subpoena.**

Given NXTLVL's role in the calls and in the consent Sunrun asserts, Plaintiff issued a subpoena to NXTLVL under Rule 45 on May 8, 2026. The subpoena and Schedule A are attached as Exhibit 2. NXTLVL was personally served on May 11, 2026 at 9:41 a.m. EDT, when Stephen Kempski of Delaware Detective Group, LLC hand-delivered the subpoena to Alyssa Daniels, a Document Specialist at NXTLVL's registered agent, 8 The Green, Dover, Delaware 19901. The Affidavit of Service is attached as Exhibit 3.[1]

Schedule A's requests are directed at a small number of discrete subjects, all of which follow directly from SunRun's purported consent defense and from Plaintiff's class claims:

- **Consent evidence.** Request Nos. 4, 22, 23, 25, and 31 seek the documents on which any claim of consent must stand, including signed writings and E-SIGN records; the specific websites, landing pages, funnel pages, and co-registration pages through which any lead relating to Sunrun was generated; every version of those pages in effect since January 1, 2023; the TCPA disclosure and consent language they displayed and every revision to it; the access, server, and error logs and fraud alerts for the periods in which visits are said to have constituted consent; the referring URL for each purportedly consenting consumer; and the identity of the affiliate compensated for each such consumer.

---

[1] Service was proper under Rule 45(b)(1). NXTLVL, LLC is a Delaware limited liability company, and the subpoena was hand-delivered by a process server to Alyssa Daniels, a Document Specialist at NXTLVL's registered agent, at 8 The Green, Dover, Delaware 19901, the address NXTLVL itself designates for the receipt of process. Personal delivery to a corporate entity's registered agent satisfies Rule 45(b)(1)'s requirement that the subpoena be "deliver[ed] . . . to the named person." The place of compliance likewise satisfies Rule 45(c)(2)(A). The subpoena commands production at the offices of Plaintiff's counsel, Perrong Law LLC, 2657 Mount Carmel Avenue, Glenside, Pennsylvania 19038, which lies well within 100 miles in straight-line distance of Dover, Delaware. Glenside lies in Montgomery County, Pennsylvania, within this Court's territorial jurisdiction. In any event, a non-party commanded to produce documents "need not appear in person at the place of production," Fed. R. Civ. P. 45(d)(2)(A), and NXTLVL may satisfy the subpoena by electronic production.

- **Calling and lead transfer records.** Request Nos. 1, 2, 9, 10, 14, 16, and 17 seek the outbound call records themselves, the scripts and prerecorded messages used, the volume of calls and leads sent to Sunrun by date and campaign, the databases reflecting each lead or transfer, the source of each lead and its chain of custody, the dialing systems and platforms used, and the individuals who placed the calls and managed the campaigns.

- **Plaintiff-specific records.** Request No. 6 seeks documents relating to Ms. Banks or to her phone number, and Request No. 22 seeks any consent NXTLVL claims as to that number specifically.

- **The Sunrun relationship.** Request Nos. 7, 8, 13, 18, 20, 24, 26, and 28 seek the agreements, instructions, compliance requirements, campaign criteria, indemnification provisions, and communications that define what Sunrun directed, knew, controlled, and paid for, the material facts of any vicarious liability analysis.

- **Compliance and complaint history.** Request Nos. 5, 11, 19, 27, 29, and 30 seek NXTLVL's TCPA policies and training, its audits and internal investigations, and the complaints, demand letters, and regulatory inquiries generated by its traffic, which goes to evidence bearing on willfulness and on the reliability of the consent NXTLVL purports to have collected.

- **Data-source identification.** Request Nos. 3, 12, and 21 ask NXTLVL to identify where responsive data lives, including CRM systems, dialer platforms, tracking databases, and email and messaging systems, and which third parties hold more of it.

## D.     NXTLVL's complete non-response.

Under Rule 45(d)(2)(B), any written objection to the subpoena was due "before the earlier of the time specified for compliance or 14 days after the subpoena is served," here, no later than May 26, 2026. NXTLVL served no objection on that date or on any date since. It has not produced a single page. It has not moved to quash or to modify under Rule 45(d)(3). It has not sought a protective order or asked for an extension. Three months after service, the subpoena has been met with silence. Plaintiff's counsel has attempted to confer with counsel for Sunrun regarding NXTLVL's compliance, which has been met with an inability to obtain or produce documents. No one has responded on NXTLVL's behalf. This motion follows.

**Argument**

**I.**     **The Consent Records Are Directly Relevant To A Central Contested Issue In The Litigation, And NXTLVL Alone Possesses Them.**

The scope of discovery obtainable by Rule 45 subpoena is the scope of Rule 26(b)(1), any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case. Relevance here is not a close question. It is Sunrun's own defense that makes NXTLVL's records indispensable. Sunrun says the calls were consented to; Sunrun says the consent came from NXTLVL's web properties; and NXTLVL is the only entity that holds the records of what those web properties said, when they said it, who visited them, and where those visitors came from. Consent under the TCPA may only be obtained through a signed writing. When a seller claims that a website supplied that writing, the claim can be tested only against artifacts, such as the version of the page as it actually appeared on the date in question, the language actually displayed above the submit button, the server log showing the submission, the IP address associated with it, the referring URL identifying the traffic source, and the affiliate records showing who was paid for the lead. Request Nos. 4, 22, 23, 25, and 31 seek precisely those artifacts and nothing more.

The reason they are sought from NXTLVL rather than from Sunrun is straightforward. Sunrun does not have them. A seller that buys leads receives a name, a number, and a representation. It does not receive the lead generator's server logs. Third-party discovery is appropriate, and indeed necessary, precisely where the non-party holds non-duplicative material in its sole possession that lies outside the party's legal right to obtain. That is this case. If NXTLVL's records show a compliant, timestamped, traceable consent submission for the Plaintiff, Sunrun's defense might succeed. If they show nothing, or show a purchased list dressed up as a web lead, that too is dispositive, and Plaintiff is entitled to know it. Either way, the

7

answer exists only in NXTLVL's systems, and a defense asserted by a defendant cannot be placed beyond the reach of discovery by the accident that the evidence for it is warehoused at a vendor.

Courts confronting the analogous problem have consistently permitted the discovery. "[A] list of phone numbers may very well bear direct relevance to a violation of the TCPA concerning the dialing of the very phone numbers listed." *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-CV-0964-GPC-DHB, 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013) (ordering production of a "dial list"). The Third Circuit has instructed more generally that where discovery "would aid in the identification of responsible defendants or the lack thereof, district courts should strongly consider granting it." *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (abrogated on other grounds). And district courts in this Circuit risk reversal if their rulings will make it impossible for any party to obtain crucial evidence. *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282, at *5 (D.N.J. June 30, 2020). An order denying access to the only records capable of resolving the parties' central dispute would do exactly that.

## II.     The Calling, Lead Source, And Relationship Records Are Likewise Relevant And Routinely Produced In TCPA Litigation.

The remaining categories require little elaboration. Request Nos. 1, 2, 9, 10, 14, 16, and 17 seek the call and lead transfer records, including who was called, when, from what platform, under what campaign, using what script, and where the underlying number came from. Requests of this kind are standard in TCPA class litigation because they establish the fact of the calls, the mechanism by which they were placed, and the composition of the class. *See Knutson*, 2013 WL 3746118, at *4. Request Nos. 3, 12, and 21 simply ask NXTLVL to provide documents identifying the systems in which the responsive data resides and the third parties who may hold

more of it, information that reduces rather than increases the burden of compliance, because it permits the parties to target production intelligently.

Request Nos. 7, 8, 13, 18, 20, 24, 26, and 28 go to the relationship between NXTLVL and Sunrun. That relationship is squarely at issue because a seller may be held vicariously liable under federal common-law agency principles for calls made by a lead generator or telemarketer on its behalf, including on theories of actual authority, apparent authority, and ratification. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013); *see Krakauer*, 925 F.3d at 660–62. Whether Sunrun set the campaign criteria, supplied or approved the scripts, imposed (or declined to impose) consent requirements, audited its vendor, and bargained for indemnification against precisely these claims is the evidence on which that analysis turns, including with any respect to any underlying calls precipitating the lead prior to the calling conduct at issue. Request Nos. 5, 11, 19, 27, 29, and 30 bear on the same questions and on willfulness under 47 U.S.C. § 227(c)(5). A lead generator that received complaints, demand letters, or regulatory inquiries about its traffic, and that audited or disciplined itself in response, generated a record that speaks directly to whether the consent it sold was worth anything.

Finally, Request No. 6 seeks documents relating to Ms. Banks herself and to her number. No plausible objection to that request exists, and NXTLVL has offered none.

## III.     NXTLVL's Failure To Serve Any Objection Waives Its Objections And Requires Production.

Rule 45(d) sets out the exclusive procedure by which a non-party may resist a subpoena and obtain protection from compliance. It may serve written objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served," Fed. R. Civ. P. 45(d)(2)(B), or it may move to quash or modify under Rule 45(d)(3). NXTLVL did neither. A subpoena recipient that fails to object within the time the Rule allows ordinarily waives the

9

objections it might have made, and courts will excuse the default only in unusual circumstances and for good cause, typically where the non-party and the serving party were in contact about compliance during the objection period. Nothing of the sort occurred here. NXTLVL did not engage at all.

This Court has long held that a non-party in NXTLVL's position must produce. In *Bove v. Worlco Data Sys., Inc.*, No. CIV.A. 86-1419, 1987 WL 7627, at *2 (E.D. Pa. Mar. 9, 1987), the subpoena recipient "did not, as required by [Fed. R. Civ. P.] 45, serve written objections on defendants or move to quash the subpoena in advance of the return date," and the court accordingly "require[d] [him] to produce all documents responsive to the subpoena as to which no claims of privilege have been raised." The same order is warranted here. And if NXTLVL withholds documents on privilege grounds, Rule 45(e)(2)(A) requires it to log them. Plaintiff asks only that NXTLVL be required to do what the Rule already obliged it to do three months ago.

**IV.    This Court Is The Proper Forum And Possesses The Authority To Enforce The Subpoena.**

Rule 45(d)(2)(B)(i) provides that the serving party may move "the court for the district where compliance is required for an order compelling production or inspection." The subpoena commands production at the offices of Plaintiff's counsel in Glenside, Montgomery County, Pennsylvania, which lies within this District. That place of compliance is within 100 miles of the Delaware address at which NXTLVL was served, satisfying Rule 45(c)(2)(A). Rule 45(g) confirms this Court's enforcement authority. The court for the district where compliance is required "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Plaintiff does not seek contempt in the first instance and asks instead only for an order directing compliance, but reserves the right to seek

10

relief under Rule 45(g) should NXTLVL disregard this Court's order as it has disregarded the subpoena.

## Conclusion

Sunrun has made NXTLVL's records the foundation of its defense, and NXTLVL has responded to a validly served federal subpoena with three months of silence. For the reasons explained above, Plaintiff respectfully requests that the Court enter an Order:

A.    Granting this Motion;

B.    Compelling NXTLVL, LLC to produce all documents responsive to Plaintiff's Rule 45 subpoena, together with a privilege log for any document withheld on privilege grounds, within fourteen (14) days of the Order; and

C.    Providing such other and further relief as the Court deems appropriate.

PLAINTIFF,
By her attorneys

Dated: August 10, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2026, the foregoing was served via electronic mail on counsel for the Defendant in the underlying action, and via electronic mail and postal mail on:

NXTLVL, LLC
c/o: DELAWARE CORPORATE HEADQUARTERS, LLC
8 THE GREEN, SUITE A
DOVER, DE 19901

Dated: August 10, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

12